ANDERSON-TULLY COMPANY *v.* GILLETT LUMBER COMPANY.

Opinion delivered March 22, 1920.

1. SPECIFIC PERFORMANCE—BILL NOT DEMURRABLE BY REASON OF EX-HIBITS.—In a suit for specific performance, a complaint alleging a contract by defendant for the sale of standing timber was not demurrable because exhibits filed by plaintiff in response to defendant's motion showed a contract with a third person, without showing his authority to bind defendant.

2. SPECIFIC PERFORMANCE—CONTRACT TO CONVEY STANDING TIMBER.—A contract to convey standing timber is a contract to convey "an interest in land," within the specific performance doctrine, though Acts 1905, page 361, makes timber in certain cases personal property for purposes of taxation.

3. SPECIFIC PERFORMANCE—SUFFICIENCY OF COMPLAINT.—In a suit for specific performance, a complaint alleging defendant's insolvency and a consequent inadequacy of remedy is good on demurrer.

4. SPECIFIC PERFORMANCE—TIMBER CONTRACT.—A contract for the conveyance of merchantable timber on certain land may be enforced specifically if the term "merchantable timber" is shown by the evidence to be sufficiently definite.

Appeal from Arkansas Chancery Court; *John M. Elliott,* Judge; reversed.

*W. N. Carpenter,* for appellant.

1.   The court erred in its ruling upon the demurrer and in holding that under act No. 146, Acts 1905, the sale of the timber was in effect a severance of it from the soil and that it became personal property and that specific performance would not lie.   Standing timber is a part of the realty and so remains until actually severed from the soil.   14 Ark. 431; 73 *Id.* 331; 69 *Id.* 442; 57 *Id.* 340. Since the passage of said act 146 this court holds that timber is part of the soil until severed.   109 Ark. 223-230; 118 *Id.* 192.   See also 77 Ark. 116; 86 *Id.* 202; 89 *Id.* 361; 120 *Id.* 313.

2.   Specific performance should have bee decreed. 40 Ark. 391; 10 A. & E. Ann. Cas. 164; 204 Ill. 82; 68 N. E. 414; 3 Pom. Eq. Jur., 1404; 13 So. 682.   See also 10 A. & E. Ann. Cas. 931; 6 Col. 319.   The old rule as to realty has been relaxed.   5 Col. App. 193; 37 Pac. 39; 3 Ark. 383; 5 Price 325; 1 Sim. & St. 607; 25 N. J. Eq. 265; 14 Wis. 693; 17 Ga. 177; 13 Atl. 625.

The present rule is stated in 78 N. E. Rep. 1002.

The injunction should have been granted.   91 Ark. 171.   The court erred in dissolving it.   95 Ark. 571; 113 *Id.* 325.

*T. J. Mohen* and *John L. Ingram,* for appellee.

The complaint does not state a cause of action.   The letters and telegrams were the foundation of appellant's action and were filed in response to appellee's motion and became part of the record and controlled the averments and allegations of the complaint.   68 Ark. 263; 91 *Id.* 400; 94 *Id.* 572; 99 *Id.* 218; 104 *Id.* 459.   Palmer was not president of the corporation, and it is not shown who he was.   The complaint and exhibits should be considered on demurrer.   91 Ark. 400; 116 *Id.* 44; 99 *Id.* 218; 104 *Id.* 459; 68 *Id.* 263.   The record shows that there was no contest of any kind between appellant and appellee. Act 146 does not say that timber sold separately from the land shall be classed as personal property for taxation but as personal property and subject to taxation,

etc. It only declares what was already the law. Trees selected, marked and sold are constructively severed and become personalty. 58 S. W. 438; 98 Mich. 260; 91 Pac. 365; 75 Ark. 336. The decree is correct.

SMITH, J. Appellant, hereafter referred to as plaintiff, filed a complaint against appellee, hereafter referred to as defendant, containing the following allegations: That both plaintiff and defendant are corporations. That on or about August 13, 1919, defendant was the owner of Spanish Grants 2358 and 2406, in Arkansas County, Arkansas, and that on or about that date defendant, by letters and telegrams, sold plaintiff all the merchantable timber standing on said lands, except the pecan and hackberry, for the price and sum of $6,000. That defendant had refused to perform said contract, and was attempting to sell the timber to other parties, and would do so unless restrained. That plaintiff "had purchased this particular tract of timber for its kind, character and quality of timber thereon, for a particular use and purpose, and that they can not obtain any other of its like kind, character and quality that will suit and fulfill the purposes for which they purchased this particular tract." Plaintiff alleges its willingness and readiness to purchase the timber, and tenders into court $6,000 for that purpose.

The insolvency of the defendant was alleged, and there was a prayer for a temporary restraining order to prevent defendant from selling the timber, and for a decree for the specific performance of the contract to sell.

A motion was filed by defendant to require plaintiff to file the letters and telegrams constituting the contract, and in response to this motion plaintiff filed the letters and telegrams passing between plaintiff, Anderson-Tully Company, and one Cal Balmer, which makes a complete and valid contract, except that it does not appear from this correspondence who Cal Balmer was,

nor what authority, if any, he had to act for the defendant.

The point is made that this is a case in equity and that the exhibits above referred to are the foundation of the action and will control the averments of the complaint, and that these exhibits show no authority for Balmer to act for defendant, and that therefore, defendant is not bound.

It is also insisted that under Act No. 146, Acts 1905, p. 361, timber which has been sold apart from the land on which it stands becomes personalty, and that specific performance should be denied on that account.

It is true the exhibits to the complaint do not disclose who Balmer is nor what authority he had to act for and bind the defendant. But that is a matter of proof. The complaint alleges a valid contract for the sale of the timber, and the exhibits do not conflict with that allegation. When the case has been developed these exhibits may or may not prove sufficient to bind the defendant. That will depend on Balmer's authority to act for it. But the exhibits do not, on their face, show Balmer to have been without authority, and we must, therefore, in testing the sufficiency of the complaint on demurrer, say that, by intendment, the contrary is alleged.

We think the act of 1905 is of no importance here. The title to the act is, "An act to make timber in certain cases in this State personal property for the purposes of taxation." In a number of cases prior to the passage of this act we recognized timber as a part of the realty and held that a conveyance of it as such conveyed an interest in the land itself; and we think there was no legislative intent to overturn those decisions. And in a number of cases since that act we have reiterated the doctrine that a conveyance of the timber on a certain tract of land is a conveyance of an interest in the land itself, and that the timber is real estate until it is severed from the soil. *Griffith* v. *Ayer-Lord Tie Co.*, 109 Ark. 223; *Graysonia-Nashville Lbr. Co.* v. *Saline Devel-*

*opment Co.,* 118 Ark. 192, and cases there cited. The act is intended to make timber sold separately and apart from the land on which it stands personalty for the purposes of taxation, so that the land and the timber may be separately assessed and the owner of the land be not required to pay the taxes on the timber, which would otherwise be charged to him as a part of the land.

The demurrer should not have been sustained because there is an allegation of insolvency and a consequent inadequacy of remedy, and it may be that testimony can be adduced showing a special and peculiar value in the timber which gives it a value to the plaintiff which a judgment for damages could not adequately compensate. But we do not decide the point, as it is not especially insisted upon in the briefs and is evidently not the question which will be decisive of the case when the cause is tried out on its merits, upon the remand of the cause for that purpose.

The point to which counsel have chiefly directed attention, and the difficult question in the case, is whether specific performance will lie to compel a conveyance of timber. It appears from the exhibits that the parties contemplated a deed from defendant to plaintiff. This deed would have evidenced, not only the timber conveyed, but that reserved, and would likewise have evidenced the time given for the removal of the timber, which was five years.

In the article on Specific Performance in 25 R. C. L., p. 238, it is said that "In similar manner an option to sell standing timber, after being unconditionally accepted by the vendee, may be specifically enforced against the vendor." In support of that text the case of *Bryant Timber Co.* v. *Wilson,* 65 S. E. 932, is cited. The contract there ordered specifically performed is not essentially different from the one here under review, and in that case the Supreme Court of North Carolina said: "The contract is definite and certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made.

Its meaning is plain and its various provisions carefully and clearly stated. There is a valuable consideration. The agreement is mutual. Specific performance is not only entirely practicable, but is necessary in order to give the plaintiff the full benefit of the contract, and there is nothing inequitable in its enforcement. In short, the contract has every requisite which is usually regarded as necessary to authorize a court of equity to compel specific performance. Pomeroy, Eq. Jurisprudence, secs. 1400-1505. Then, again, the contract does not deal with personal property. It plainly savors of the realty. Growing trees are often, especially in the older cases, regarded as a part of the land and the sale thereof as a sale of an interest in land. 28 Am. & Eng. Enc. of Law 537, and cases cited. In this State growing trees have ever been regarded as part of the realty, and deeds and contracts concerning them are governed by the laws applicable to land. (Cases cited.)''

In the case of *Omaha Lbr. Co.* v. *Co-Operative Inv. Co,.* 133 Pac. 1112, a contract for the sale of timber provided that the title to the timber was to remain in the grantor until removed, and it was, therefore, contended that this was a contract for the sale of chattels, and not for an interest in real estate, and that, for that reason, it could not be specifically enforced. The Supreme Court of Colorado said this contention could not be sustained, and in the opinion in that case it was said:

''It seems to be quite well settled that a contract for the sale of timber such as we are now considering may be specifically enforced. The English rule was stated to be: 'Thus a contract for a sale of timber can be specifically executed, although the timber is to be cut down at a future time or at intervals, and the money to be paid by installments. It is a certain contract, and the manner of dealing with the thing sold, by future cuttings, is no objection to a specific performance. The one man sells the timber, and the other pays for it the price contracted for. Here part of this contract is at

once capable of a specific execution. This admits of no doubt.' *Gervais* v. *Edwards,* 2 Drury & Warren, 83.''

See, also, other cases there cited, and *Gilfallan* v. *Gilfallan,* 38 A. & E. Ann. Cas. 784, 789.

It is finally insisted that the contract was not sufficiently definite to support this action, for the reason that it does not define the term merchantable timber. In reply, it may be said that the proof may show this to be a term of such definite signification as to be a sufficient designation of the timber sold without explanatory words accompanying it in the contract. *Liston* v. *Chapman & Dewey Land Co.,* 77 Ark. 120.

The decree of the court below is, therefore, reversed and the cause remanded with directions to overrule the demurrer.